UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SIDNEY HALL, | ) | Case No. 1:21-cv-00897 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) | Magistrate Judge Thomas M. Parker |
| ORTHOMIDWEST, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**OPINION AND ORDER**

In January 2023, this case was remanded from the Northern District of Texas, where the MDL Court had been conducting consolidated pretrial proceedings in MDL No. 2244. Immediately upon remand, the parties completed briefing on various motions, including certain motions *in limine* (ECF No. 27) and dismissal (ECF No. 28; ECF No. 31), and notices and objections relating to discovery (ECF No. 30). In the transferee court's suggestion of remand, it identified this case as one that was in the early stages of discovery such that it would no longer benefit from inclusion in the MDL. (ECF No. 25-3, PageID #1236–37.)

To understand the status of discovery, this case's readiness for trial, and the briefs the parties were filing, the Court held a status conference on February 3, 2023. (Minutes, Feb. 3, 2023.) Discussion with counsel during that status conference showed the Court that, whatever the status of discovery or the readiness of the case for trial, the parties had a threshold dispute regarding the proper parties at this stage of the proceedings. Therefore, the Court directed counsel to present the relevant

materials in a single filing to facilitate review and consideration of that issue. (ECF No. 35.) With the benefit of those materials, and upon consideration of the record, the Court addresses that threshold issue.

## PROCEDURAL BACKGROUND

On March 4, 2021, Plaintiff Sidney Hall filed suit in State court against OrthoMidwest, Inc., Stacie Matrka, TJM Medical, Inc., and Thomas J. McTighe (collectively, the "Distributor Defendants"). (*See* ECF No. 1-2, PageID #24.) In an amended complaint filed in State court on March 25, 2021, Plaintiff added Medical Device Business Services, Inc., DePuy Synthes Sales, Inc., Johnson & Johnson Services, Inc., and Johnson and Johnson (collectively, the "Johnson & Johnson Defendants") as named Defendants, in addition to the Distributor Defendants. (*See* ECF No. 1-3, PageID #49–50.)

### A. Removal and Transfer to the MDL

Plaintiff's amended complaint asserts various claims based on injuries he allegedly sustained following hip replacement surgery involving medical devices the Johnson & Johnson Defendants manufactured. (ECF No. 1-3.) Specifically, Plaintiff asserts claims for manufacturing defect (Count IV), defective design (Count V), defect due to inadequate warning or instruction (Count VI), and manufacturing a non-conforming product (Count VII) against the Johnson & Johnson Defendants. (*Id.*, PageID #77–84.) Plaintiff also asserts claims against the Distributor Defendants on theories of failure to warn (Counts I and II) and distributing a non-conforming product (Count III). (*Id.*, PageID #73–77.)

2

On April 29, 2021, the Johnson & Johnson Defendants removed the case to federal court on the basis of diversity jurisdiction, arguing that the Distributor Defendants were fraudulently joined to defeat diversity and, thereby, avoid transfer to long-running multi-district litigation in the Northern District of Texas. (ECF No. 1, ¶¶ 4 & 15, PageID #2 & #4.) Plaintiff moved to remand on May 3, 2021 and sought consideration on an expedited basis. (ECF No. 8, PageID #276.) In a ruling dated May 24, 2021, the Court denied the motion to remand, finding that the Distributor Defendants were fraudulently joined. *Hall v. OrthoMidwest, Inc.*, 541 F. Supp. 3d 802, 810–11 (N.D. Ohio 2021). Accordingly, the Court dismissed the Distributor Defendants. (*Id.*; *see also* ECF No. 20.) Then, the Judicial Panel on Multidistrict Litigation transferred the case to MDL No. 2244 pending in the Northern District of Texas. (ECF No. 21.)

### B. Relevant Proceedings in the MDL

Based on a review of the MDL docket and the parties' joint filing (ECF No. 35), the Court determines that the following procedural background is relevant to the threshold issue regarding the proper parties at this stage of the proceedings.

#### B.1. Pretrial Motions and Other Case Management Issues

Upon transfer to the MDL, Plaintiff moved to amend the complaint on June 15, 2021. (ECF No. 35-5.) In this motion, Plaintiff sought leave to file a proposed second amended complaint "to cure, for the first time, the pleading issues which caused the Northern District of Ohio to dismiss the claims against [the] Distributor Defendants." (ECF No. 35-5, PageID #1697.) The Johnson & Johnson Defendants timely objected. (ECF No. 35-6.) The Distributor Defendants did not respond.

3

By May 2022, with no ruling on the motion seeking leave to file the proposed second amended complaint, Plaintiff moved to remand the case from the MDL to the transferor court, the Northern District of Ohio. (MDL *Hall*, No. 3:21-cv-1321 (N.D. Tex.), ECF No. 37.)

On September 16, 2022, the MDL Court entered a scheduling order that applied to some seventy cases, including *Hall*. (ECF No. 35-8.) As relevant to the threshold issues before the Court, the scheduling order directed each plaintiff to amend by September 30, 2022. (*Id.*, PageID #1923.) Further, it set a schedule for expert discovery to close by December 2, 2022 (*id.*), established a discovery cut-off of December 9, 2022, and set a schedule for filing dispositive and other pretrial motions in December 2022 (*id.*, PageID #1924).

### B.2. Second Amended Complaint

Immediately after this order, and before the deadline in the MDL Court's scheduling order, Plaintiff filed a second amended complaint. (ECF No. 35-9.) The second amended complaint names both the Distributor Defendants and the Johnson & Johnson Defendants (*id.*, PageID #1927–28), asserts the same seven causes of action against the Distributor Defendants and the Johnson & Johnson Defendants as the amended complaint (*id.*, ¶¶ 193–260, PageID #1960–74), and attaches twenty pages of exhibits (*id.*, PageID #1977–97). Those exhibits are referenced and excerpted in Paragraph 129 of the second amended complaint and describe a program by which a distributor is trained to be "an active participant in the surgeries to both implant and remove the components of the implant systems." (*Id.*, ¶ 129, PageID #1950–51.) Further, Plaintiff makes new specific allegations concerning the Distributor

4

Defendants' alleged commissions on sales of the medical device at issue in this litigation. (*Id.*, ¶¶ 105–111, PageID #1946–47.)

In addition, the second amended complaint contains various others changes from the amended complaint, but most are not material for present purposes. (*See, e.g., id.*, ¶¶ 18–20, 23, 24, 30, 31, 37, 50, 66, 76–84, 91–104, 107–11, 117, & 124 & 128–30, PageID #1932–35, #1937, #1939, #1942–46 & #1947–51.) At bottom, the two material changes in the second amended complaint that bear on the threshold issue before the Court are: (1) the addition of the Distributor Defendants, and (2) allegations establishing a more active role for distributors than described in the amended complaint before the Court in 2021.

After filing of the second amended complaint, Plaintiff perfected service on the Distributor Defendants. (MDL *Hall* ECF No. 55; MDL *Hall* ECF No. 56.) The Distributor Defendants answered (MDL *Hall* ECF No. 59; MDL *Hall* ECF No. 60) by the deadline set in the MDL Court's scheduling order (ECF No. 35-8). In doing so, they did not directly contest their presence in the case by motion or defense but did deny the jurisdictional allegations (MDL *Hall* ECF No. 59, ¶ 3, PageID #988; MDL *Hall* ECF No. 60, ¶ 3, PageID #1044) and asserted failure to state a claim as a defense (MDL *Hall* ECF No. 59, ¶ 3, PageID #1035; MDL *Hall* ECF No. 60, ¶ 3, PageID #1090).

### B.3. Cross-Motion for Dismissal of the Distributor Defendants

Plaintiff again sought remand to the transferee court, the Northern District of Ohio—this time under the guise of a motion to amend the MDL's Court's scheduling order. (*See* MDL *Hall* ECF No. 61, PageID #1098.)

On October 20, 2022, the MDL Court denied as moot Plaintiff's motion for leave to amend the complaint filed on June 15, 2021, noting that "Plaintiff filed an Amended Complaint on September 21, 2022." (ECF No. 35-12, PageID #2109.) A week later, the parties agreed to an amended schedule for case-specific discovery, and Plaintiff withdrew his request for remand. (*See* MDL *Hall* ECF No. 65.) On December 2, 2022, the MDL's special master recommended denial of Plaintiff's first motion to remand based on the MDL Court's entry of a scheduling order (MDL *Hall* ECF No. 72.) Without objection, the Court adopted that recommendation on December 28, 2022. (MDL *Hall* ECF No. 91.) Somehow, for reasons that the record does not make clear, within the span of two weeks the MDL Court entered a conditional remand order, remanding *Hall* and 21 other cases to their respective transferor courts. (MDL *Hall* ECF No. 113.)

## ANALYSIS

In response to Plaintiff's motion for partial summary judgment on certain defenses filed on December 16, 2022 (ECF No. 35-1), the Distributor Defendants filed a cross-motion for dismissal of the claims Plaintiff asserted against them based on the Court's prior dismissal of those Defendants in connection with the motion to remand in May 2021 (ECF No. 35-2). Based on this argument, Plaintiff's consolidated opposition and reply (ECF No. 35-3), and Defendants' consolidated opposition and reply (ECF No. 35-4), the Court turns to analysis of the proper parties and the potential effect of that determination on the Court's jurisdiction. Doing so requires untangling the procedural knot the interplay of general MDL proceedings and case-

6

specific litigation in *Hall* created, first in the Northern District of Ohio in 2021 and then in the MDL.

The Distributor Defendants begin by arguing that the Court's ruling in May 2021 dismissing them without prejudice based on fraudulent joinder constitutes law of the case that follows it on transfer to the MDL and back again. (ECF No. 35-2, PageID #1652.) They view Plaintiff's filing of the second amended complaint as an end-run around the fraudulent-joinder ruling that used an administrative housekeeping order in the MDL as cover for an improper amendment. (*Id.*, PageID #1653.)

Plaintiff contends that he complied with the MDL Court's scheduling order permitting him to file an amendment, which sought to cure pleading deficiencies resulting in the fraudulent-joinder ruling. (ECF No. 35-3, PageID #1657–59.) Further, he relies on another case in the MDL that the MDL Court remanded to an Ohio State court because it asserted claims against the Distributor Defendants, destroying diversity jurisdiction. (*Id.*, PageID #1659–60.) Just as the Distributor Defendants contend that they vigorously disputed their inclusion in this lawsuit at every turn (ECF No. 35-4, PageID #1678), so too does Plaintiff insist that he diligently pursued amendment in the wake of the Court's fraudulent-joinder ruling (ECF No. 35-3, PageID #1660–61). Plaintiff also points out that the schedule the MDL Court set for pretrial workup of this case implied that the pleadings were closed; therefore, Defendants' time to dispute the Distributor Defendants' presence in the case passed. (*Id.*, PageID #1661.) In short, Plaintiff points to the procedural posture of the MDL

7

and to the liberal amendment standard of Rule 15 to defend the procedural propriety of including the Distributor Defendants in this lawsuit, which has the effect of destroying federal jurisdiction.

## I. Section 1447(e)

Review of the record in the MDL presents a thorny and inconsistent tangle with respect to the threshold question in this case. The Court begins with what it determines is the controlling statute, 28 U.S.C. § 1447(e), which governs procedure in federal courts after removal of a case from State court. The statute provides:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

28 U.S.C. § 1447(e). It gives a court discretion to permit joinder of a defendant whose presence in the case would destroy federal jurisdiction. If permitted, the case is remanded to State court. Alternatively, the court has discretion to deny joinder in such circumstances. *Id.*

An amendment that would destroy federal subject matter jurisdiction requires analysis under this statute. *See Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F. App'x 218, 221 (6th Cir. 2016) (per curiam). That is, the statute governs an amendment that would destroy federal jurisdiction even if a plaintiff could otherwise amend as a matter of course. *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 n.2 (C.D. Cal. 2002) (collecting authorities); *see also* 14C Wright & Miller, *Federal Practice and Procedure* § 3739.1 (4th ed. 2018). Because the statute controls even amendment as of right and trumps Rule 15 or another potentially applicable

8

rule, the Court looks to Section 1447 to begin to make sense of the intricate procedural history relevant to the threshold issue now before the Court.

### I.A. Analysis Under the Statute

In exercising its discretion under the statute, courts consider (1) whether the amendment intends to destroy federal jurisdiction, (2) prejudice, (3) timeliness in seeking amendment, and (4) any other equitable factors. *Telecom Decision Makers*, 654 F. App'x at 221 (citing *Bailey v. Bayer CropScience, L.P.*, 563 F.3d 302, 309 (8th Cir. 2009), and *Mayes v. Rapoport*, 198 F.3d 457, 462–63 (4th Cir. 1999)).

*First*, without question, through his amendment, Plaintiff intends to destroy federal jurisdiction. Beginning with the fraudulent joinder of the non-diverse Distributor Defendants in State court, Plaintiff at every turn has sought to craft his complaint to avoid the jurisdiction of the federal courts. His consistent and repeated efforts to remand the case to State court leave no doubt about the intent of the second amended complaint.

*Second*, allowing litigation to proceed in federal court will not prejudice Plaintiff. To the contrary, Plaintiff will benefit to some degree from the MDL proceedings, which completed generic discovery applicable to all MDL cases according to the requirements of federal law, which might differ in some material respects from Ohio procedure. For example, the bases of expert opinions, an important element of each party's causation claims and defenses, differ under federal and State evidentiary rules, potentially requiring new expert discovery and diminishing the value of consolidated proceedings in the MDL. To the extent that Plaintiff might experience some difficulty in pursuing two separate cases—one in State court against the

9

Distributor Defendants and one in federal court against the Johnson & Johnson Defendants, the record contains no evidence of any such burden. Indeed, it does not show that Plaintiff even attempted to pursue litigation in State court against the Distributor Defendants following the Court's fraudulent-joinder ruling in 2021.

But the record does show prejudice to the Johnson & Johnson Defendants and the Distributor Defendants from allowing the amendment at this late date. They litigated in the MDL in reliance on the fraudulent-joinder ruling—reliance which the record shows has now occasioned various discovery disputes and disagreements about preparing this case for trial. (*See, e.g.*, ECF No. 30; MDL *Hall* ECF No. 97.) Those matters remain for another day. For present purposes, the record establishes the simple fact that Defendants have acted in reliance on the fraudulent-joinder ruling.

*Third*, of the factors to which courts look to determine whether to permit a post-removal amendment that would destroy federal jurisdiction, only timeliness might favor Plaintiff. After all, upon transfer to the MDL, Plaintiff immediately moved for leave to amend the complaint. (ECF No. 35-5.) But the MDL Court did not rule on the motion for leave to amend until fifteen months later, shortly after Plaintiff filed the second amended complaint in response to the MDL Court's broadly applicable case management order. Still, the delay in the filing of the second amended complaint cannot be said to be the fault of Plaintiff, who took every reasonable step (and then some) to put the issue before the MDL Court.

But timeliness might raise a different problem on this record. On May 24, 2021, the Court dismissed the Distributor Defendants as fraudulently joined. (ECF

No. 20.) Plaintiff did not serve them with the second amended complaint until September 28, 2022—well outside the one-year savings statute of Ohio law. *See* Ohio Rev. Code § 2305.19(A). By then, the statute of limitations had run because Plaintiff did not file suit until some twenty-two months after allegedly discovering on April 30, 2019 that he might have a claim. (ECF No. 1-3, ¶¶ 113 & 114, PageID #71.) Therefore, the applicable limitations period might bar Plaintiff's claims against the Distributor Defendants. But the Court need not decide that issue to determine whether to permit the amendment. It merely shows that, despite Plaintiff's diligence in pursuing amendment, other timeliness issues come into play and offset this factor, making it a less important consideration in the Section 1447 analysis on the facts and circumstances of this case.

Of the factors to which courts look when applying Section 1447(e), the Court determines that the first—whether the amendment intends to destroy federal jurisdiction—has the most weight in the procedural context of this case and that no other equitable factors materially affect the analysis. Accordingly, the Court exercises its discretion under the statute to deny joinder of the Distributor Defendants.

### II.B. Plaintiff's Arguments

As an initial matter, Plaintiff maintains that he amended according to the schedule the MDL Court set, making the amendment procedurally proper. (ECF No. 35-3, PageID #1657–59.) In other words, Plaintiff contends that the second amended complaint with its claims against the Distributor Defendants is the operative

11

pleading and necessitates remand to State court because those Defendants are non-diverse, destroying federal-subject matter jurisdiction.

However, it is clear that Section 1447(e) controls amendment following removal, not Rule 15 or other procedural rules or orders, and the MDL Court provided *no* reasoning specific to *Hall* to support the scheduling order pursuant to which Plaintiff filed the second amended complaint. (ECF No. 35-8.) Put another way, the statute leaves the question whether a post-removal amendment is proper where it might destroy jurisdiction to the discretion of the district court, and the MDL Court gave no indication that it recognized or exercised this discretion. Nor did it provide reasoning to support a decision to permit an amendment that might divest the federal courts of jurisdiction. In such circumstances, a failure to articulate reasoning constitutes an abuse of discretion. *See, e.g., Ohio Midland, Inc. v. Ohio Dep't of Transp.*, 286 F. App'x 905, 910 (6th Cir. 2008) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). This omission by the MDL Court is understandable when one appreciates the number of cases the MDL Court and the parties litigating there were managing. Indeed, the procedural order on which Plaintiff relies to support the propriety of his amendment applied to some seventy cases in the MDL. (ECF No. 35-8.) With that number of cases (and more) to manage, each transferred from a different district court and in a different procedural posture, it is not surprising that a scheduling order might inadvertently overlook the specific posture of a case such as this.

Similarly, where parties are litigating multiple cases, a decision to include one (or not to object to one) with a distinct procedural posture or history as part of a broader case management order or plan says nothing about the views of those parties on the propriety of an otherwise procedurally improper amendment. Likewise, a decision not to undertake briefing on such a procedural matter, or not to seek formal clarification of a scheduling order, says little—particularly where, as here, the Distributor Defendants preserved the relevant defenses in their answers. Put simply, the Distributor Defendants had little to gain in the MDL from pursuing any of the procedural steps Plaintiff now attempts to use as evidence that they failed to object to his amendment. After all, an MDL aims to maximize procedural efficiency to expedite resolution. Only on remand to a transferor court do particular procedural developments potentially take on material significance.

Plaintiff also points out that the schedule the MDL Court set for the pretrial workup of this case implied that the pleadings were closed. (ECF No. 35-3, PageID #1661.) Again, the MDL context lessens the force of this claim. Moreover, Plaintiff's motion for leave to amend remained pending and was ultimately denied, suggesting that the workup the MDL Court contemplated was limited to the parties at the time, which did not include the Distributor Defendants.

Finally, Plaintiff views the second amended complaint as an opportunity to cure the pleading defects that resulted in the Court's fraudulent-joinder ruling. (*Id.*, PageID #1658–59.) This characterization misunderstands the Court's fraudulent-joinder ruling. Contrary to Plaintiff's claim, that ruling did not turn on a technical

13

deficiency attributable to the arguably different federal and State pleading rules. Indeed, the amended complaint at issue in 2021 contained 183 paragraphs and thirty-six pages of allegations. (ECF No. 1-3.) Instead, the Court ruled that the amended complaint failed to state a claim under Ohio law based on the allegations, supplemented with evidence then before the Court. (ECF No. 20, PageID #581–85; *Hall*, 541 F. Supp. 3d at 809–11.) Plaintiff argues that in the second amended complaint he now presents evidence to rebut the declarations the Distributor Defendants used to support their arguments in favor of removal. (ECF No. 35-3, PageID #1659.) But the time to submit those materials was in 2021. Those allegations and documents to which Plaintiff points were available then. In fact, the Court considered at least some of them. (ECF No. 20, PageID #582; *Hall*, 541 F. Supp. 3d at 810.)

At bottom, Plaintiff pulls out all the procedural stops in an effort to include the non-diverse Distributor Defendants in the operative pleading in this case. But those miss the mark. Instead of technical procedural formalities, the amendment Plaintiff seeks requires analysis under Section 1447(e). Under that statute, considering each of Plaintiff's arguments in the equities, Plaintiff fails to convince the Court to exercise its discretion to permit the second amended complaint.

## II. The MDL Court's Ruling in *Spaeth*

In *Spaeth v. TJM Medical, Inc.*, No. 3:22-cv-303, 2021 WL 5936462 (Nov. 18, 2022 N.D. Tex.), the MDL Court rejected the same fraudulent-joinder argument Defendants made in *Hall* in 2021. (ECF No. 35-3, PageID #1667.) First, based on its prior rulings, the MDL Court held that federal law does not preempt the State-law

14

claims against the Distributor Defendants. (*Id.*, PageID #1672–73.) When it came to whether the plaintiff in *Spaeth* could recover from the Distributor Defendants under the Ohio Product Liability Act, the MDL Court construed the facts alleged in favor of the plaintiff and determined that the plaintiff stated a claim against the non-diverse Distributor Defendants. (*Id.*, PageID #1675.) Accordingly, the MDL Court remanded the case to State court. (*Id.*, PageID #1676.)

Based on *Spaeth*, Plaintiff argues that the new allegations and evidence in the second amended complaint foreclose the exercise of federal jurisdiction in *Hall*. (ECF No. 35-3, PageID #1660 & #1663.) Treating *Spaeth* as an additional equitable factor in the analysis under Section 1447(e) does not change the Court's decision about how to exercise its discretion on this record for three reasons. First, *Spaeth* made no mention of the Court's fraudulent-joinder ruling in *Hall*. That suggests the fraudulent-joinder record in *Spaeth* differed from that in *Hall* in 2021. As noted, the opportunity for Plaintiff to present facts that might alter the jurisdictional determination was in 2021 when he moved to remand. Second, *Spaeth* appears to apply traditional tort theories of strict liability and negligence to analyze the viability of the plaintiff's claims against the Distributor Defendants under Ohio law. (ECF No. 35-3, PageID #1674–75.) This approach fails to appreciate the unique framework of tort liability under the Ohio Product Liability Act.

Third, and in any event, as the Distributor Defendants argue (ECF No. 35-2, PageID #1652–53), the Court's fraudulent-joinder ruling is law of the case and, for the reasons explained above in applying Section 1447(e), none of the reasons for

15

revisiting that determination apply. *See, e.g., International Ins. Co. v. Red & White Co.*, No. C-93-0659 MHP, 1994 WL 706361, at *5 (N.D. Cal. Dec. 14, 1994) (citing *Moore v. James H. Matthews & Co.,* 682 F.2d 830, 833–34 (9th Cir. 1982)). Accordingly, *Spaeth* does not control here or provide an additional consideration in favor of remand.

## CONCLUSION

For all these reasons, the Court determines that the Distributor Defendants are not proper parties in this case and declines to exercise its discretion to permit Plaintiff leave to amend. The operative pleading remains the amended complaint (ECF No. 1-3), subject to the Court's Order dated May 24, 2021 dismissing the Distributor Defendants. By separate order, the Court will address the other pending motions, disputes, and pretrial case management issues shortly.

**SO ORDERED.**

Dated: July 31, 2023

J. Philip Calabrese
United States District Judge
Northern District of Ohio